WINDHORST, J.
*962 The former foster parents of G.H., F.M. and E.D. ("appellants"), appeal the juvenile court's May 22, 2018 denial of their "Motion to Intervene Due to Major Change of Status and Circumstances" (the "third motion to intervene") in the matter entitled, State of Louisiana In The Interest Of G.H., Case No. 16-CC-62. The paternal grandmother, C.V. ("appellee"), filed a motion to dismiss this appeal. For the following reasons, we deny the motion to dismiss and affirm the denial of appellants' third motion to intervene.
FACTS AND PROCEDURAL HISTORY
G.H. was born on June 30, 2016 testing positive for methadone and opiates in his meconium and experiencing withdrawal symptoms. Appellants became G.H.'s foster parents on July 25, 2016. On July 26, 2016, G.H. was placed in the temporary custody of the Department of Children & Family Services ("DCFS"). On August 15, 2016, DCFS filed a "Child In Need of Care Petition," seeking to have G.H. adjudicated as a child in need of care. On September 20, 2016, G.H.'s parents, through their attorneys, stipulated that G.H. is in need of care without admitting the allegations of the petition. On July 25, 2017, the court approved a DCFS recommended plan of adoption for G.H.
On October 4, 2017, the paternal biological grandmother filed a motion to intervene and requested custody of G.H. At an October 24, 2017 hearing, the court granted the grandmother's motion to intervene and authorized her to have visitation with G.H.
On February 14, 2018, appellants filed their first motion to intervene[1] in G.H.'s case as his foster parents who intend to adopt him. On February 22, 2018, appellee filed an exception and opposition to appellants' motion to intervene. On February 27, 2018, the juvenile court granted C.V.'s Exception and gave appellants time to cure the defects in their pleadings.
On March 6, 2018, appellants amended their first motion to intervene, and on April 10, 2018, the juvenile court denied it. Appellants did not appeal or seek supervisory review of this ruling.
On April 23, 2018, appellants filed their second motion to intervene,[2] asserting that it was in G.H.'s best interest to allow their intervention as they have consistently provided love and care for G.H. for all his life, and that there has been no "substantial parental compliance" with or any "reasonable expectation of significant improvement" with the parents' case plan. Appellants also alleged that some of the paternal grandmother's behavior demonstrated a lack of appropriate parental discretion and discipline.
At a May 1, 2018 hearing, the court considered multiple issues, including appellants' second motion to intervene. It also DCFS's plan sought to change G.H.'s placement to the grandmother. On May 1, 2018, the court denied appellants' second motion to intervene, and found that a change in placement was in G.H.'s best interests and changed G.H.'s placement from foster care at appellants' home to his *963 paternal grandmother's home, with the stipulation that the foster parents have continued visitation with G.H. Therefore, as of May 1, 2018, appellants were no longer G.H.'s foster parents. Although they verbally gave notice of intent to file a writ application and/or appeal, appellants did not seek any appellate review of the May 1, 2018 ruling. While the minute entry/judgments show that appellants were present in court when the juvenile court denied their request for intervention on May 1, 2018, the first mailed notice of that judgment was dated May 15, 2018.
A May 17, 2018 Court Appointed Special Advocates report indicates that G.H. was living with his paternal grandmother, her husband and his three brothers at this time. According to the report, the grandmother had reported that G.H. was doing well with the transition from living with his foster parents to living with her, and that he enjoyed being around his brothers. This report also states that he is playful and affectionate with his brothers.
On May 15, 2018, G.H.'s biological mother and father filed a motion for permission of court to execute a surrender for adoption to C.V. wife of/and M.V. A hearing was set for May 22, 2018 for the DCFS to show cause why G.H.'s biological parents should not be given permission to execute a surrender directly to C.V. and M.V., the paternal grandparents.[3]
On May 21, 2018, appellants filed their third motion to intervene[4] in G.H.'s placement proceedings. In this pleading, appellants acknowledged that because they were no longer G.H.'s foster parents, they lacked the rights accorded them under La. Ch.C. art. 695. Appellants, however, asserted that they had the right to intervene as interested persons under La. Ch.C. art. 697, which allows any interested person to intervene in the case review procedure to facilitate the permanent placement of the child and to ensure that the best interests of the child are protected. Appellants also contended that there had been a disregard for their requests for their previously court-ordered meaningful visitation.
On May 22, 2018, the juvenile court denied appellants' third attempt to intervene, revoked DCFS's custody of G.H., and granted custody to G.H.'s paternal grandmother. This change of custody was clearly with the ongoing agreement of DCFS, which had previously on May 1, 2018 obtained the juvenile court's approval to place the child with the grandmother, and which waived a contradictory hearing with regard to the change in custody from itself (DCFS) to the grandmother. The court allowed appellants to state their reasons in support of their motion to intervene on the record. Appellants asserted that they were entitled to intervene because they were interested parties and there were problems with their court-ordered visitation. In denying appellants' intervention, the court reasoned that it was not in the child's best interest and that there was no good cause to allow the intervention because it would slow down the permanency plan in this case.
Notice of mailing of the May 22, 2018 judgment to the parties is dated May 25, 2018. On June 4, 2018, appellants appealed this judgment.
On August 28, 2018, appellee filed a motion to dismiss appellants' appeal, asserting it was untimely and that appellants *964 lacked standing. On August 31, 2018, appellants filed an opposition to the motion to dismiss. On September 12, 2018, appellee filed a reply to appellants' opposition, and on September 19, 2018, appellants filed a supplemental opposition to the motion to dismiss.
LAW AND ANALYSIS
Motion to Dismiss
The Louisiana Children's Code was written with the intent that courts should resolve parental status and permanency of children issues in an expeditious manner. State ex rel. C.P., 2000-2703 (La. 1/17/01), 777 So.2d 470. Consistent with the statutory scheme of expediency, La. Ch.C. art. 332 provides that appeals shall be taken within fifteen days from the mailing of notice of judgment, or if a motion for new trial is filed, the delay for appeal commences to run from the date of the mailing of notice of denial of the new trial motion. The delay for filing a motion for new trial is three days from the mailing of the notice of judgment. La. Ch.C. art. 332.
In the motion to dismiss, appellee argues that appellants' appeal was untimely because appellants failed to timely seek review of the May 1, 2018 judgment, denying their second motion to intervene. Appellee asserts that because the notice of mailing of the May 1, 2018 judgment was dated May 15, 2018, under La. Ch.C. art. 332, appellants had until May 18, 2018 to file motion for new trial or May 30, 2018 to appeal this judgment. Appellee asserts that because appellants did not file either, this appeal is untimely. Appellee also argues that the third motion to intervene was, in fact, an untimely filed motion for new trial. Further, appellee asserts that this third motion was rendered moot because appellants no longer had custody of the minor child, and that appellants lacked standing to appeal the May 22, 2018 judgment because they were never parties to the case.
In opposition to the motion to dismiss, appellants assert that this appeal was taken from the juvenile court's May 22, 2018 ruling, denying their third motion to intervene. Appellants contend that their third motion to intervene was distinctive from their previous motions to intervene in that it addressed a major change in status and circumstance and other substantive issues, including problems with appellants' court-ordered visitation with G.H. In this regard, appellants claim that the juvenile court linked the question of best interest of the child with issues of visitation, custody, bonding, attachment and transition throughout the case proceedings. In response to appellee's assertion that the appeal is moot and that they lack standing, appellants argue that they are not required to have any family or custodial connection to the child to seek review of the juvenile court's ruling.
Our review of appellants' motions to intervene indicates that while these motions are quite similar, appellants addressed somewhat different substantive issues in each motion. In the third motion to intervene, appellants addressed issues regarding the problems with their court-ordered visitation with G.H., which was not an issue in the prior motions to intervene. Appellants were not seeking review of a previous ruling, but seeking intervention on a new basis and assistance with enforcement of the court-ordered visitation. Thus, we find that the third motion to intervene was not a motion for new trial, but a sufficiently distinctive motion to intervene. Consequently, for purposes of determining timeliness, appellants' appeal delay commenced from the May 25, 2018 notice of signing judgment as to their third motion to intervene. Appellants had until *965 June 11, 2018 to file their notice of appeal.[5] Appellants timely filed their notice of appeal on June 4, 2018. We therefore deny appellee's motion to dismiss.
Motion to Intervene
For the following reasons, we find no error in the juvenile court's denial of appellants' motion to intervene.
Prior to August 1, 2018, La. Ch.C. art. 672 A[6] provided as follows:
A. Whenever custody of a child is assigned to the Department of Children and Family Services, the child shall be assigned to the custody of the department rather than to a particular placement setting . The department shall have sole authority over the placement within its resources and sole authority over the allocation of other available resources within the department for children judicially committed to its custody. (Emphasis added.)
Pursuant to this provision, a foster child is in the department's custody while in foster care, and is not in the custody of the foster parents. Nonetheless, foster parents do have certain rights to participate within the sound discretion of the court. State in the Interest of M.L., 611 So.2d 658 (La. App. 4 Cir. 12/15/92), writ denied, 613 So.2d 977 (La. 2/19/93). In particular, for case review hearings, La. Ch.C. art. 695 A provides that the department shall give notice of the right to appear to all foster parents providing care for the child, and La. Ch.C. art. 695 B specifies that the requisite notice shall inform the foster parent of the day, time, and place of the hearing as well as his right to attend the hearing and be heard.
Based on these provisions, foster parents are entitled to participate in case review proceedings and permanency proceedings, but only to the extent provided by these articles, and only while they remain foster parents. As is made clear by La. Ch.C. art. 672, a child judicially committed to DCFS is in the custody of DCFS, and not in the custody of the foster parents with whom the child is placed. In this case, on May 1, 2018 the juvenile court changed G.H.'s placement from appellants' foster care to C.V., the paternal grandmother. Therefore, as of May 1, 2018, appellants were no longer foster parents or had any right to participate in the case as foster parents. Accordingly, when appellants filed their third motion to intervene on May 21, 2018, we find appellants lacked standing to intervene in the case.
Although appellants ceased to be foster parents by the juvenile court's order of May 1, 2018, pursuant to La. Ch.C. art. 697 for good cause shown, the court may allow any interested person, agency, or organization to intervene in case review proceedings to facilitate the permanent placement of the child and to insure that the best interests of the child are protected. The trial court is vested with the discretion to allow an intervention as an "interested person." State in Interest of M.L., 611 So.2d 658, 661 (La. Ct. App. 1992), on reh'g (Dec. 16, 1992), writ denied, 613 So.2d 977 (La. 1993). The juvenile court has the ultimate authority over a child's placement. State in Interest of Jennifer W., 485 So.2d 504, 506 (La. 1986), citing State in Interest of Sapia, 397 So.2d 469 (La. 1981).
*966 In denying appellants' third motion to intervene, the juvenile court concluded that intervention would slow down the permanency placement plan in this case. When the third motion to intervene was filed, G.H. was living with his grandmother and his brothers, was enjoying being around his brothers and was openly affectionate with them. Considering the foregoing and that permanency is one of the main goals, if not the primary goal, in child in need of care proceedings, we find no abuse of discretion in the juvenile court's denial of appellants' motion to intervene. We therefore affirm the juvenile court's judgment denying appellants' motion to intervene.[7]
CONCLUSION
For the foregoing reasons, we affirm the juvenile court's judgment denying appellants' motion to intervene, and remand the matter to the trial court for further proceedings.
AFFIRMED; REMANDED
LILJEBERG J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS
Appellants, F.M. and E.D., filed a notice of appeal seeking review of several rulings entered by the juvenile court on May 22, 2018. Before either party submitted their appellate brief, appellee, C.V., filed a motion to dismiss the appeal, which was referred to the merits. I concur with the majority's decision to deny the motion to dismiss the appeal with respect to the juvenile court's denial of appellants' third motion to intervene. I also concur with the majority's decision to affirm the juvenile court's decision to deny appellants' third motion to intervene. However, I dissent and believe this Court should grant C.V.'s motion to dismiss the appeal with respect to appellants' request for review of the juvenile court's decision to change custody from DCFS to the paternal grandparents. Furthermore, when they filed their appellate brief, appellants raised additional issues with respect to earlier rulings and conduct of the juvenile court, which the majority pretermitted. For the reasons stated more fully below, I believe this Court should dismiss the remaining issues raised by appellants, F.M. and E.D., rather than pretermitting discussion of these issues.
First, as stated above, I concur with the majority's decision to deny C.V.'s motion to dismiss the appeal with respect to issues arising from the denial of appellants' third motion to intervene on May 22, 2018. Appellants filed a timely appeal and the third motion to intervene raised new issues regarding appellants' visitation with the minor child, G.H. I also agree with the majority that the juvenile court did not abuse its discretion by finding appellants failed to establish good cause to intervene in the proceedings.[1] However, prior to determining the juvenile court did not abuse its discretion, the majority opinion states *967 that appellants did not possess "standing to intervene in the case." While I agree that appellants failed to establish "good cause," and as discussed below, that appellants lacked standing to appeal certain other issues raised in their brief after they were removed as foster parents, I disagree that they lacked standing to intervene. Both La. C.Ch. art. 697 (case review proceedings) and La. C.Ch. art. 707 (permanency review proceedings) allow "any interested person, agency or organization" to seek leave to intervene "to insure the best interests of the child are protected." I believe former foster parents seeking to adopt a child could qualify as "interested persons" who can seek leave to intervene upon a showing of good cause.
I also disagree with the majority's decision to deny C.V.'s motion to dismiss with respect to the second issue raised in appellants' notice of appeal. In addition to seeking review of the denial of their third motion to intervene, appellants noticed their intent to appeal the juvenile court's decision at the May 22, 2018 hearing to change custody from DCFS to the paternal grandparents. In conjunction with this decision, the trial court also granted the biological parents' "Motion for Permission of Court to execute a Surrender for Adoption to [C.V. wife of/ and M/V."][2] In their brief filed with this Court, appellants argue the juvenile court did not have the authority to allow the biological parents to surrender their parental rights and transfer custody to C.V. Appellants contend the surrender was prohibited pursuant to La. C.Ch. art. 1112, because they had a pending petition to terminate the biological parents' parental rights.
In her motion to dismiss, C.V. notes that La. C.Ch. art. 700 states that, with respect to actions taken following a case review hearing, "[a]ny person directly affected may appeal the findings or orders of the court rendered pursuant to this Article. [Emphasis added.]"[3] C.V. argues that appellants were not "directly affected" by the decision to change custody and lack standing to appeal because appellants never received custody of the child as foster parents,[4] were removed as foster parents on May 1, 2018, and failed to seek timely review of that decision.[5] I agree with these arguments and believe this Court should grant C.V.'s motion to dismiss the appeal with respect to appellants' request for review of the May 22, 2018 rulings relating to the surrender and the change in custody due to appellants' lack of standing.
I also disagree with the majority's decision to pretermit discussion of the remaining assignments of error raised in appellants' brief based on their finding that "appellants lacked standing with regard to their motion to intervene." The additional assignments of error relate to rulings and hearings held prior to May 22, 2018. In their fourth assignment of error, appellants contest the juvenile court's May 1, 2018 finding that DCFS's decision to change foster placement from appellants to C.V. was in the minor child's best interest.[6] As discussed in the majority opinion, *968 notice of judgment with respect to the rulings rendered at the May 1, 2018 hearing was mailed to appellants' counsel on May 15, 2018. La. C.Ch. art. 332 only allows 15 days from the date of the mailing of the notice of judgment to file an appeal. Appellants did not indicate their intent to appeal the May 1, 2018 judgment in their June 4, 2018 notice of appeal. Furthermore, their attempt to now raise this issue in their appellate brief is untimely as more than 15 days have passed since the mailing of the notice of judgment. Therefore, I would dismiss this assignment of error as untimely.
In their third assignment of error, appellants argue in general that the juvenile court failed to comply with La. C.Ch. art. 695(D), which states "[t]he court shall solicit and consider information regarding the care and treatment of the child from any foster parent, pre-adoptive parent, or relative providing care for the child who appears for the hearing." Appellants contend the only date the foster mother was asked to testify was on December 5, 2017. For the reasons stated above with respect to the fourth assignment of error, I believe the appeal of this issue is untimely. Furthermore, the record does not contain any instances where appellants, while still foster parents, asked to be heard by the juvenile court and were refused. In fact, at the April 10, 2018 hearing where the juvenile court denied appellants' first motion to intervene, the juvenile court recognized that, despite denying their motion, appellants had a right to be present at the hearings and the right to be heard. The juvenile court further noted "that whatever needs to be said by foster parents, the agency brings it up." This is not a court of first impression. We only review issues submitted to the trial court, unless the interest of justice clearly requires otherwise. Uniform Rules, Courts of Appeal, Rule 1-3.
Finally, in their fifth assignment of error, appellants generally argue that the juvenile court interjected itself into the proceedings and advocated on behalf of C.V. For reasons stated above, the appeal of this assignment of error also is untimely. Furthermore, the record does not contain any objections from appellants regarding this issue. Therefore, it cannot be considered pursuant to Uniform Rule, Court of Appeal, Rule 1-3.

This motion was entitled "Motion to Intervene by the Child's Foster Parents."

This motion to intervene was titled "Motion for Reconsideration and for Hearing Relative to the Denial of Foster Parents Petition to Intervene," and on April 30, 2018, appellants filed a Memorandum in Support of the Foster Parents' Motion for Reconsideration.

While most of the pleadings involving the paternal grandmother only refer to her or are filed by her, this pleading does refer to both her and her husband.

This motion to intervene was titled "Motion to Intervene Due to Major Change of Status and Circumstances."

The fifteenth day, June 9, 2018, fell on a Saturday.

By Act 189 of the 2018 Ordinary Session, La. Ch.C. art. 672 A was amended to delete the "sole" authority of DCFS, and added paragraph 672 A(2) which now allows the court, after contradictory hearing, to disapprove placement by DCFS. This provision was not in effect, nor did the court disapprove.

Because we find that appellants lacked standing with regard to their motion to intervene and no abuse of discretion in the court's denial of that motion, we do not address the remaining assignments of error.

The only substantive issue raised in the third motion to intervene involved issues regarding the scope of appellants' visitation with G.H. and the trial court clarified on the record at the May 22, 2018 hearing that appellants should receive three hours of visitation a week. Appellants do not seek review of this decision on appeal.

M.V. is the minor child's paternal grandfather.

La. Ch.C. art. 710 contains an identical provision relating to appeals of a juvenile court's findings following a permanency plan hearing.

As noted in the majority opinion above, La. C.Ch. 672(A) provides that DCFS retains custody of a child placed in foster care.

As discussed, infra , I agree appellants did not seek timely review of the trial court's May 1, 2018 finding that it was in the best interest of G.H. to change foster placement from appellants to C.V.

The juvenile court recognized during the hearing that DCFS possesses the authority to decide where the child will be placed when in foster care, and the juvenile court possesses the authority to approve or disapprove of the placement based on considerations such as the health and safety of the child, as well as the child's best interest. See State In Re LCB , 01-2441 (La. 1/15/02), 805 So.2d 159, 164-65.